UNITED STATES DISTRICT COURT c
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DAMYTRIC D. MCHENRY, Plaintiff | CIVIL ACTION NO. 1:13-CV-03241; SEC. P |
| VERSUS | CHIEF JUDGE DRELL |
| OFFICER PATTAIN, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

On December 16, 2013, *pro se* prisoner Damytric D. McHenry ("McHenry") filed a complaint against: Danexter Pattain ("Pattain"), Nicole Walker ("Walker") (also referred to as Officer Willis by McHenry), Josh Ball ("Ball"), Willie Holden ("Holden"), Jason Gaskill ("Gaskill"), and Corrections Corporation of America ("CCA"). (Docs. 1, 6). McHenry is incarcerated at Winn Correctional Center ("WCC"). (Id.).

Defendants filed a Motion for Summary Judgment supported by affidavits and other evidence. (Doc. 43). McHenry did not file an opposition to Defendants' Motion for Summary Judgment.

### I. Background

McHenry complains that Defendants deprived him of adequate medical care and subjected him to cruel and unusual punishment. (Docs. 1, 6). Specifically, McHenry alleges that on June 8, 2012, he had an argument with Officer Pattain. (Id.). After the argument, McHenry requested an administrative remedy procedure ("ARP") form. (Id.). McHenry then stated that Officer Pattain retaliated by opening

the cell door without notice so as to deliberately cause injury to McHenry's right arm. (Id.).

Additionally, McHenry alleges that when he returned from LSU Medical Center on June 11, 2012[1], the restraint on his right ankle[2] would not open when Defendants Holden and Ball attempted to remove the restraint. (Id.). Defendant Walker was contacted and Walker authorized another inmate to use hobby shop tools to saw through the shackles around McHenry's ankles. (Id.). McHenry complains that its removal resulted in multiple breaks to his skin that required medical treatment for extreme pain and swelling, and which resulted in permanent scarring. (Id.). McHenry further complains that WCC and/or CCA has a policy and/or practice "of using inmates to [sic] jobs on its behalf due to being understaffed." (Id.).

McHenry seeks monetary and injunctive relief in the form of an order directing Defendants to send him to medical specialists to determine the cause of numbness, pain, and discomfort in his right arm, and pain in his ankle and lower leg. (Id.).

II. Law and Analysis

  A. Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any

---

[1] In his initial Complaint, McHenry states this incident occurred on June 17, 2012. (Docs. 1). However, McHenry's amended Complaint and records indicate a date of June 11, 2012. (Docs. 6, 43).

[2] McHenry's Complaint states that the restraint on the right ankle refused to unlock, the removal of which caused extreme pain, swelling, and which left a permanent scar. McHenry requests to "[s]ee a specialist to determine the cause of the occasional pain and discomfort in my _____ ankle and lower leg." However, the medical records and affidavits of Officers Holden and Ball indicated it was his left ankle restraint.

2

material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[3]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

McHenry did not file an opposition to Defendants' Motion for Summary Judgment. It is well settled that the non-moving party must rely upon more than mere allegations in its pleadings to show a genuine issue for trial. S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). Specifically, Rule 56 requires that a party go beyond the pleadings and show where there is a genuine dispute as to a material fact. See

---

[3] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

Fed. R. Civ. P. 56. The Court is permitted to consider the facts in support of the Motion for Summary Judgment as undisputed if an opposition is not filed, and to grant summary judgment if those facts show that the movant is entitled to the judgment in his favor. Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988). Furthermore, Local Rule 56.2 deems that all material facts set forth in the statement required from the moving party will be admitted, unless controverted by the non-movant.

> B. **Defendants were not deliberately indifferent to McHenry's medical needs.**

McHenry claims that Defendants were deliberately indifferent to his medical needs following the June 9, 2012 cell door incident and the June 11, 2012 failure of the ankle restraint lock mechanism. (Docs. 1, 6).

McHenry is a convicted inmate. Therefore, his claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail, a plaintiff must establish that the response to a prisoner's medical needs was sufficiently harmful to evidence deliberate indifference. See id. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). It occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837-40 (1994). Furthermore, "deliberate indifference cannot be inferred merely from

4

a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Tx., 245 F.3d 447, 459 (5th Cir. 2001).

The Court must balance the needs of prisoners against the needs of the penal institution in light of medical necessity, not desirability. Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981). The fact that a plaintiff does not believe his medical treatment is as good as it should be is not a cognizable complaint. Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). A disagreement with the medical treatment does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); see also Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

As noted above, McHenry did not oppose Defendants' Motion for Summary Judgment, and did not present evidence in support of his claim. Other than the unsupported claims in McHenry's original and amended Complaints, there is nothing which supports his allegations that he has been subjected to deliberate indifference. Defendants' uncontested statement of undisputed facts and the affidavits submitted in support of their motion reflect that McHenry received adequate medical care following both incidents. (See Doc. 43). Following the cell door incident, McHenry received medical care for his arm at WCC as well as an x-ray at LSU Medical Center. (Id.). Additionally, following the removal of the ankle restraint, McHenry was treated by medical staff at WCC for complaints of left ankle pain, and was given antibiotic

5

ointment for his abrasions and instructed to follow up if his medical condition worsened. (Id.).

Based on McHenry's failure to oppose Defendants' motion and to designate evidence in support of his allegations to create a genuine issue for trial, the Court concludes that Defendants are entitled to summary judgment on this issue.

C. Claims against Danexter Pattain.

McHenry claims that Officer Pattain became upset with him for requesting an ARP form and "deliberately and/or recklessly without warning" opened the cell doors which caused injuries to his arm. (Doc. 6). McHenry claims that Pattain took those actions knowing it would pose a risk of serious harm to McHenry. (Id.).

"Absent intentional conduct, an Eighth Amendment claim requires that a prison official have acted with deliberate indifference to the needs of the inmate, exposing the inmate to a substantial risk of serious harm." Clerkley v. Roberts, 278 Fed. Appx. 364, 365 (5th Cir. 2008). A prison official must be shown to have a sufficiently culpable state of mind. The question is whether the prison official subjectively knew that the inmate faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825 (1994).

Defendants' Statement of Undisputed Facts and the attached affidavit of Delmer Maxwell indicate that Pattain was working in the Elm Unit on the C2 tier on June 9, 2012. (Doc. 43). Pattain informed Maxwell that several inmates were standing at the bars when he went to open the C2 tier. (Id.). Pattain gave a verbal

6

command to the inmates to move away from the bars before opening the gate. (Id.). After the gate opened, McHenry advised Pattain that his hands were in the bars when Pattain opened the gate. (Id.). Pattain told Maxwell that he did not specifically see McHenry's hands in the bars while he was opening the gate. (Id.). Pattain then sent McHenry to see Maxwell. (Id.).

There are no genuine issues of material fact regarding McHenry's claims against Pattain. There is no evidence that Pattain was aware of a substantial risk of harm to McHenry and failed to take reasonable steps to abate it. Pattain gave an order to the inmates to move away from the door before opening it. There is no evidence to suggest that Pattain's act of opening the cell doors was directed at McHenry or intended to cause him harm, nor has McHenry offered any evidence to dispute Defendants' account of the incident.

McHenry suffered, at most, an accidental injury, when he failed to clear his arm from the cell door before it opened. This incident was not the result of deliberate indifference.

    D.    Under-staffing at WCC.

In his Complaint, McHenry claims that he sustained injuries when another inmate had to remove his ankle restraints. (Docs. 1, 6). McHenry states that the inmate had to do so as a result of under-staffing at WCC. (Id.).

"Mere understaffing, without more, is not proof of an official policy." Gagne v. City of Galveston, 671 F.Supp. 1130, 1135 (S.D. TX. 1987), aff'd 851 F.2d 359 (5th Cir. 1988). "Evidence of understaffing would become proof of an official policy only if

more complete funding and staffing were possible and it was the deliberate intent of the policy-making official not to adequately fund and staff the jail." Id. at 1135. If officials are aware of the staffing problem but fail to take corrective action, and understaffing appears to have contributed to a violation of an inmate's Eighth Amendment rights, a causal link exists between that violation and the policy. Miles v. Wilkinson, No. Civ. CV-06-1079-A, 2007 WL 5023592, at *7 (W.D. La. Nov. 26, 2007); see also Greason v. Kemp, 891 F.2d 829, 838 (11th Cir. 1990) (citations omitted). McHenry would only have a claim if complete staffing were possible, the policy-making official deliberately intended not to adequately staff the jail, and that policy caused his injury. See id. (citing Anderson v. City of Atlanta, 778 F.2d 678, 687 (11th Cir. 1985)).

The undisputed facts show that McHenry returned from LSU Medical Center wearing restraints. (Doc. 43). However, the restraints on McHenry's left ankle could not be unlocked by Officers Holden and Ball. (Id.). McHenry was taken to the infirmary where Assistant Shift Supervisor Gaskill also attempted to unlock the restraint using his personal restraint key. (Id.). At that point, Gaskill contacted Duty Officer Warden Walker to advise her of the problem. (Id.). Gaskill then appointed an inmate, David Grillette, to help. (Id.). Grillete was familiar with the hobby shop tools and used a saw blade to cut the leg iron off. (Id.). Gaskill supervised Grillette during removal of the ankle restraint. (Id.). Grillete had placed a "thick piece of leather" between McHenry's ankle and the ankle restraint, and at no time did the saw blade touch McHenry's skin. (Id.). However, the day after removal of the ankle restraint,

8

McHenry was treated by WCC medical staff for complaints of left ankle pain. (Id.). Medical staff determined he had an abrasion on his left ankle and gave him antibiotic ointment with instructions to follow up if the pain worsened. (Id.).

McHenry claims that WCC and/or CCA has a policy or practice of "using inmate to [sic] jobs on its behalf due to being unstaffed" and that by having Inmate Grillette assist in removing McHenry's ankle restraint, McHenry faced a substantial risk of harm and contributed to his injury. McHenry has only presented a conclusory allegation and no evidence to support his claim. Defendants contend that enlisting an inmate with experience with the tools necessary to cut off McHenry's ankle restraints is in no way related to the staffing at WCC. Defendants' further state that WCC does not employ an onsite welder, nor are they required to.

There is no evidence that Defendants deliberately intended to put McHenry at risk or otherwise intended to cause harm. There is no evidence that WCC or CCA have a policy of understaffing WCC, and McHenry has not refuted Defendants' contentions that Inmate Grillette was enlisted to help due to his skills and experience with the tools as opposed to the prison being understaffed. Therefore, there is no genuine issue of material fact which would preclude summary judgment on this issue.

### E. Corrections Corporation of America is entitled to summary judgment.

McHenry contends that the CCA has a policy and/or practice of giving Motrin for pain despite repeated complaints that Motrin was not effective for his pain, and that CCA has a policy and/or practice of using unqualified inmates in positions that pose a substantial risk of serious harm to McHenry and other prisoners. (Docs. 1, 6).

9

McHenry alleges that the acts and/or omissions made by Defendants on behalf of their employer CCA make CCA liable. (Id.).

The doctrine of *respondeat superior*, which makes an employer or supervisor vicariously liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. Monell v. Dept. of Soc. Serv., 436 U.S. 658, 694 (1978). The test is whether there is a policy, custom, or action by those who represent official policy that inflict injury actionable under § 1983. Id. at 694.

McHenry has not offered any evidence that acts or omissions of CCA, or any unconstitutional policies implemented by CCA, have deprived him of his constitutional rights. Since there are no genuine issues of material fact that would preclude a summary judgment in favor of CCA, Defendants' Motion for Summary Judgment should be granted in favor of CCA.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 43) be GRANTED, and that Plaintiff's action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen

(14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 19th day of September, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge
test